UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

JULIO ALVAREZ, and
CHRISTOPHER CAMPOS,

Defendants.

1:16-cr-00395 (VEC)

Date:          February 19, 2014
Time:          12:12:42
Participants:  Christopher Campos ("Campos")
               Susan Austin ("Austin")

Audio File Name:      Out_taxi9739810644_02-19-2014_121242PM

(Beginning at 4:20)

**CAMPOS:** At this point, Susan, I like really want to say, like, you got to do what you got to do in terms of dealing with this. . . .  Did you ever meet with the FBI?

**AUSTIN:** No, I haven't done that yet.

**CAMPOS:** I mean that's part of, you know. . . .   I don't know how that affects you as a, as a, you know like a card you play.  In other words, like, yo--, I'm a victim, this person told me. . . .  Not that you didn't know about the business opportunity, but this opportunity has fallen apart.  You were misled to believe that this could happen, and this was this and this was that.  And you know, cards fall where they may.  Because you shouldn't be victimized repeatedly, right, for or an opportunity that they're not adhering to.  I mean, they're not even respecting you enough to call you.  But don't do that yet, don't hit the nuclear button yet.  Let me see if [Mr. Alvarez] will respond.

. . .

**AUSTIN:** Why did we [say the cars were for personal use]?

**CAMPOS:** That's what you were advised to do by the dealerships . . . by Orlando.  Remember, he and Julio had this thing all mapped out.  Right?  When you met him?

**AUSTIN:** Wait.  I'm sorry.

**CAMPOS:** I said he and Julio had this thing all mapped out.  Right?  When you met him, they told you, "This is what you need to do."  Right?  You went to the dealership.  They advised you every step of the way.  Am I right about that?  Because I wasn't there the day you were there.  But isn't that what happened?

**AUSTIN:** Yes.

**CAMPOS:** OK. So you were advised to do that.

. . .

**AUSTIN:** But it's still fraud.  It's bank fraud.

**CAMPOS:** I mean, bank fraud, I mean, this is what we've been talking about for a while now.  Yes, but who committed the fraud?  The dealerships.  You signed the documents, yes, but who put this whole thing together, which is the dealerships and Julio.  And this is what they did.

**CAMPOS:** I don't know what you were supposed to do in terms of what they had advised you of.

. . .

**CAMPOS:** I told you in my scenario the difference between your situation and everybody else's. And, the fact that you have all these cars, you know, was I believe the saving grace to give them back, right. But the idea was, you know, when they, like my younger brother, my cousin, uh, even my wife, they, they were getting a vehicle for personal use, right. So when they fill out the applications, they were correct. Uh, in this situation, I mean, they advised you that this is what they wanted to do. I mean this is the way they wanted to run the program. I mean, you know, what, you know, I, I don't know what you were supposed to do, uh, in terms of what they had advised you of.

. . .

**AUSTIN:** But I just feel like, you know, I'm the one left holding the bag.

**CAMPOS:** You're not, no. And that's what I don't want to happen, absolutely not, absolutely not. So, so you spoke with the attorney and so what, what was his advice to you?

**AUSTIN:** Not to talk to, not to talk to anybody and, and he would make, uh, reach out to the FBI I guess. But you know, the bottom line is, I also need to give him money.

**CAMPOS:** Absolutely. Which is why Julio needs to give you money.

**AUSTIN:** And, Ju-, exactly.

(End of call)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    - v. -

JULIO ALVAREZ, and
CHRISTOPHER CAMPOS,

        Defendants.

1:16-cr-00395 (VEC)

Date:        March 5, 2014
Time:        01:55:45
Participants:  Christopher Campos ("Campos")
              Susan Austin ("Austin")

Audio File Name:     Out_taxi9739810644_03-05-2014015545PM

(Beginning at 3:42)

**AUSTIN:**  So are, are you not -- your brother and cousin, they bought cars from multiple banks, right?

**CAMPOS:**  Yes.

**AUSTIN:**  So aren't -- aren't you -- aren't they concerned about bank fraud?

**CAMPOS:**  I mean yes and -- I mean they, they're, they're not, you know, they're position is they didn't -- you know, they didn't do anything wrong.  You know, they did everything that they were instructed to do and I think they're, they're different. The only difference they have is that they actually, you know, got cars for themselves.  So they never -- the only bank fraud -- what bank fraud did, did you commit that you --

**. . .**

**CAMPOS:**  What bank fraud did you commit?

**AUSTIN:**  Using multiple, using multiple banks to buy these cars.

**CAMPOS:**  But you didn't do that.  You didn't do that.

**AUSTIN:**  I did.  I signed the paperwork.

**. . .**

**AUSTIN:**  So are, are you not -- your brother and cousin, they bought cars from multiple banks, right?

**CAMPOS:**  Julio is -- this is his industry, the cab industry, the taxi industry. The dealership that's their industry. The person running their credit, they're looking for a business opportunity.  You know, it was, it was legitimate in so, in so far as you were concerned in so far as the dealership approving it. You know, how is -- how is -- how are -- how are you the, the customer supposed to know that it -- they're committing bank, bank fraud by resubmitting your application to various banking institutions?  Right?

**AUSTIN:**  Mm-hmm.  I hear you.

**CAMPOS:**  So, so --

**AUSTIN:**  I hear you.

**CAMPOS:**  So, so what's the bank fraud?  Is the bank fraud that, like, they, they, the only issue is, yes, that personal use issue, okay?  But, but the fact they had an economic situation that was planned, that was set up that, that was approved -- the dealership said they could do this, that they can -- that they

can put together this agreement for wh-, on what basis? On the basis of the taxi cab income. Right? That it was going to cover. It was sufficient, right? So that was all spoken about before you even -- before any of us ever even discussed this. Right? That was approved --

**AUSTIN:** So --

**CAMPOS:** -- you didn't, didn't go in and negotiate this. You didn't go in and negotiate with the dealership regarding, you know, how they structured the deal, right?

**AUSTIN:** N- no, I went in and I signed papers.

**CAMPOS:** Yeah, you were -- you were given the papers to sign, absolutely. You're not the first or the last. You're not the only dealership. I mean, the, the -- from my understanding in this -- in this industry, you're not -- the, the -- they doing -- the dealerships are doing this across the board. This, this isn't the only dealership doing this. So okay. Now you signed -- you signed paperwork for these cars. Yes, you did. Okay. But you didn't submit the application to the bank. You didn't get the approvals. So this is what I'm trying to understand -- wel-, if they're trying to suggest that you committed bank fraud because your, your income doesn't match it wasn't based on your income. They -- the understand I have.

**AUSTIN:** What was it based on?

**CAMPOS:** It was based on the economics of the cars. It was based on the program. They -- if you -- if you rent out the car -- remember? The, the whole -- I mean Orlando looked at this -- I mean Orlando took money out of his own pocket to pay for insurance because he saw the, the amount of money that was going to be made. I mean the deal-, they went to the general manager of the dealership and they approved this. This is not like some rogue, you know, car sal-, seller.

**AUSTIN:** Mm-hmm.

**CAMPOS:** So I'm still trying to understand -- I mean I don't know if you've explained the details of the facts to the -- your lawyer.

    **. . .**

(End of call)

UNITED STATES OF AMERICA,

- v. -

1:16-cr-00395 (VEC)

JULIO ALVAREZ, and
CHRISTOPHER CAMPOS,

Defendants.

Date:          March 7, 2014
Time:          01:21:49
Participants:  Christopher Campos ("Campos")
               Susan Austin ("Austin")

Audio File Name:     Out_taxi9739810644_03-07-2014_012149PM

(Beginning at 3:07)

**CAMPOS:**  I believe you are of the opinion the sooner you can get, let's just say if you could sell the cars, or you could deal with the financial obligation of the cars, that you would be willing to entertain any and all options.  Am I right about that?

**AUSTIN:**  Legal options.  Yes.

**CAMPOS:**  That's what I mean.  I mean, I wouldn't be talking about anything but legal options.  What do you think we would be talking about?

**. . .**

(End of call)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

JULIO ALVAREZ, and
CHRISTOPHER CAMPOS,

Defendants.

1:16-cr-00395 (VEC)

Date:          March 9, 2014
Time:          09:59:00
Participants:  Christopher Campos ("Campos")
               Julio Alvarez ("Julio")
               Susan Austin ("Austin")

Audio File Name:        Meeting_3_9_2014.002

(Beginning at 4:20)

**CAMPOS:** Okay. So let's get that off the table. I benefited? Well, I obviously thought this was a very good deal if I put my wife and my, my family at risk. I didn't come get strangers. I didn't go get anybody from the street that I didn't trust or respect. I put my wife in this. I love my wife. You may not think I love you because we don't have a family relationship, but I care about you. I didn't put anybody into this deal that I had no emotional release. I put my family at risk. My family. So, to, to sit here and say that I got a profit or that I benefited. No, this has been nothing but a freaking nightmare to me.

. . .

**CAMPOS:** Like, originally I said, look, we're in the process of negotiating the return of these vehicles. They 16 said no -- okay, and they've never s- said another word about it.

**AUSTIN:** No, but to be --

**CAMPOS:** But --

**ALVAREZ:** -- honest, he, he did propose to us to return the cars back in November --

**CAMPOS:** Yes.

**ALVAREZ:** -- somewhere around there. He, he did tell us, guys, what I feel is we should return all these cars.

**CAMPOS:** And then --

**ALVAREZ:** And I don't know if we mentioned that to you at that point.

**CAMPOS:** Let me --

**ALVAREZ:** That we discuss it --

**CAMPOS:** -- didn't you guys have a meeting? Didn't you t-, --

**AUSTIN:** You, you did say return. You said --

**CAMPOS:** Yes.

**ALVAREZ:** Yeah.

**AUSTIN:** -- that's when we should return the cars.

**ALVAREZ:** Yeah. He did --

**AUSTIN:** And I did --

**ALVAREZ:** -- say.

**AUSTIN:** -- say I wanna preserve my credit because when I return --

**ALVAREZ:** Yes.

**AUSTIN:** -- return the cars --

. . .

**CAMPOS:** The only, the only thing that I -- I, I, I was never in any conversation negotiating with Orlando or I wasn't there when he talked to his general manager. I just know he represented that in front of me --

**ALVAREZ:** Uh-huh.

**CAMPOS:** -- in front of you --

**ALVAREZ:** Mm-hmm.

**CAMPOS:** -- to me that they cleared it. And all I could tell you -- I mean, not that all I could tell you 'cause anytime you've called me I -- I've responded. You know I've not abandoned my post because I don't believe in that. And he doesn't, you know, he's frustrated me with not communicating, but you and I have always said that we still believe in him, like, in his -- and saying that, that he wasn't stealing money, you know, from us. We've always said that to each other. Like it's frustrating that Julio doesn't call us back, but we believe that he's -- and I still believe it that he -- the l-, as of a few weeks ago you said you still believe it. We haven't had another conversation.

But what I always thought based on Orlando's relationship with you and the way he facilitated the insurance, the way he took money out of his own pocket is that what he saw was the number of cars that could be put on the road, the amount of money that was generated, and, and approved these based on the economics of the taxis. Like, in other words, she has good credit. We're gonna use her credit, but we know that these -- the cars are gonna be paid off because of what the taxi cabs are gonna do.

**ALVAREZ:** Mm-hmm.

**CAMPOS:** Because there's no way she can pay this off.

**ALVAREZ:** Mm-hmm.

**CAMPOS:** He knew that.

**ALVAREZ:** Mm-hmm.

**CAMPOS:** Right?  There's, there's no way 21 cars are gonna be paid off by your salary.

**AUSTIN:** Exactly.

**. . .**

**CAMPOS:** -- It was a business deal that we all looked at which is why my lawyer, the first thing he said was did you make any money?  No.  Did it make him money?  What was the par-, what was the scenario?  Three years from now when the cars are paid off we were all gonna split profits.  You weren't even making any money --

**ALVAREZ:** No.

**CAMPOS:** -- until the cars were paid off.

**AUSTIN:** Right.

**CAMPOS:** That was your agreement.  We all sat down to, to -- and, and talked about this. I referred you and initially you were –

**ALVAREZ:** And, and --

**CAMPOS:** -- supposed to make an investment.

**ALVAREZ:** -- it was done like that, it was done like that to protect the --

**CAMPOS:** Protect --

**ALVAREZ:** -- investor.

**CAMPOS:** -- the investor.

**ALVAREZ:** Because it was easy to tell everybody as the money comes in let's split it.  You get five, you get ten, you get whatever.  That's, that's not --

**CAMPOS:** That wasn't the intent.

**ALVAREZ:** No.

**CAMPOS:** So we went through that.  You agreed.  You and your brother looked at this business opportunity.  We all made it -- remember you went back, we said --

**AUSTIN:** Yeah, yeah.

**CAMPOS:** Okay. So we all --

**AUSTIN:**   You didn't put a gun to my head.  It was my decision.

**CAMPOS:**   Right. But we all, we all -- now --

**AUSTIN:**   Went in on blind faith.

**CAMPOS:**   Yeah.

      **. . .**

**ALVAREZ:**   -- and this is, this is what we saw, one dealer, two dealer, three dealer, four dealers at the end.  How can we think --

**CAMPOS:**   And I never --

**ALVAREZ:**   -- because you can --

**CAMPOS:**   -- went into -- negotiated with a dealer.

      **. . .**

**AUSTIN:**   Why wouldn't you just go the extra step and, and, and figure out what the structure of the deal was?

**ALVAREZ:**   We did.

**AUSTIN:**   With --

**CAMPOS:**   Because the deal was already -- presented to me as already approved. I wasn't in --

**ALVAREZ:**   Even to me --

**CAMPOS:**   Remember what happened.  Remember how this happened.

**ALVAREZ:**   Even to me.

**CAMPOS:**   I was there visiting for something else.

**AUSTIN:**   But when you say, okay, the deal's approved then wouldn't you say anything, approved how, like, what, what is the structure?  Are we going to multiple banks?  Are we going to, to one bank?  Are we going--

**CAMPOS:**   That would never have been -- listen to me, not for nothing --

**AUSTIN:**   What am I missing?

**ALVAREZ:**   I wish, I wish I could do it.

**CAMPOS:** How, how would, how would I even -- that's, that's nothing something I would even think about once it was approved. Once they already had -- at the time the original deal -- you weren't even thought of. I, I -- you wasn't even a --

**ALVAREZ:** The first deal of all the deals was cars.

**CAMPOS:** And –

**ALVAREZ:** And they came with the cars already approved and they -- because they came looking for an opportunity, the guys.

**CAMPOS:** And they were referred --

**ALVAREZ:** They said –

**CAMPOS:** -- by very reputable people.

. . .

**CAMPOS:** And all the knowledge you see me having now is only as a result of what has happened. I didn't have this going in. I never dealt in the taxi industry personally in my life, but I know he's the most reputable, I mean, featured in newspapers. I mean, this guy sits with a president of a country. I told you all of those things which is what helped you make your business evaluation. He's respected, reputable. There was never, ever, ever a question about his integrity. And I told you all that.

. . .

**CAMPOS:** You know what frustrates me though? Is that Orlando sat and said, based on these numbers this could get done. And what I'm saying is if you get ten cars and rent them for X amount -- I mean, we've gone over the numbers a million times. That's where -- that's what I thought they were approving these deals on.

**ALVAREZ:** Yes, as far as the --

**CAMPOS:** That's what I thought Honda, like, the dealership was saying, yeah, this looks like a sexy investment to do because of this ["X"]. I didn't know that they were saying, alright, let's submit this application to ten people --

**ALVAREZ:** Something important. Orlando took me to -- it was right around when we were doing Susan's deals, took me to talk to the GM of the dealer.

**CAMPOS:** I told you this.

**ALVAREZ:** And, and he asked me what is it that you guys doing with the cars? And I told him we're leasing to the drivers. I own three car service. We're leasing to the drivers on this way. He said, okay. It was said at that meeting.

**CAMPOS:** I know that.

**ALVAREZ:** I don't feel comfortable giving one person cars no more, so from now on we're gonna give 'em five. They ne-, he's not telling me it's illegal we wanna stop it. He said --

**CAMPOS:** And the reason why he didn't feel comfortable 'cause when I -- the -- it was months and months [unintelligible] [1:17:19.6] was because they would be on the hook to buy back --

**ALVAREZ:** Exactly.

. . .

**CAMPOS:** Do you -- let's, you know, you know in your heart your desire was never to commit any fraud.

**ALVAREZ:** Right.

**CAMPOS:** I know and I hope you know that my desire was never to commit fraud. Come on, that doesn't even make sense to me. Our intent was a, a good business deal that right now is suspect 'cause they haven't ruled that it was -- the suspect is being investigated to see if it was wrong. If the cars get paid off I think we're in a much better position. The fact that he's made this number of payments I think puts us -- these are mitigating factors when you're looking at this conspiracy to commit bank fraud thing. Is it fun? Is it -- no. It's not happy for anybody. But I think we gotta do what we gotta do given the circumstances which is pay off -- get these cars paid off, restore everything we can restore, try to restore you back to the position one, my wife back to position one, you know, my family and, and this is the most incredible learning experience I've ever had. Like, really.

. . .

**CAMPOS:** You never put those cars on the road. Once you learned this situation wasn't kosher or whatever you didn't do the transfer and you -- when you talked to me about it what was my opinion? He got mad at me, remember?

**AUSTIN:** Julio?

**CAMPOS:** When you told me they wanted me to change my address what did I tell you?

**AUSTIN:** "You can't."

**CAMPOS:**   "You can't," right?

**AUSTIN:**   Mm-hmm.

. . .

(End of call)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│                                          │
│  UNITED STATES OF AMERICA,                │
│                                          │
│     - v. -                                │
│                                          │
│                                          │
│  JULIO ALVAREZ, and                       │
│  CHRISTOPHER CAMPOS,                       │
│                                          │
│          Defendants.                      │
│                                          │
└─────────────────────────────────────────┘
```

1:16-cr-00395 (VEC)

Date:          March 12, 2014
Time:          05:37:44
Participants:  Christopher Campos ("Campos")
               Susan Austin ("Austin")

Audio File Name:     Out_taxi9739810644_03-12-2014_053744PM

(Beginning at 1:09)

**AUSTIN:** And you know, I can't even call the bank. . . . Because you know what happens when I call the bank? They --

**CAMPOS:** What?

**AUSTIN:** They say, oh, Ms. Austin, we need to confirm something from you. Is the car residing at 43 Krueger 2 Court?  Are you using the car for personal use? I -- I'm not -- you know, and I'm not going to lie --

. . .

(End of call)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

- v. -

JULIO ALVAREZ, and
CHRISTOPHER CAMPOS,

Defendants.

1:16-cr-00395 (VEC)

---

Date:           March 18, 2014
Time:           12:21:45
Participants:   Christopher Campos ("Campos")
                Susan Austin ("Austin")

Audio File Name:        Out_taxi9739810644_03-18-2014_122145PM

(Beginning at 3:07)

**AUSTIN:**       So why are you -- why are not concerned about that?

**CAMPOS:**       Because [unintelligible] [00:03:12] concerned about that.  Why ca-, why am I going to be concerned?  I gave you advice about a business decision that you made, and, and my wife made it -- I don't believe that I was committing any kind of bank fraud.  I don't believe my wife committed any kind of bank fraud. I don't believe that you committed bank fraud.  If you want to believe that, I can't argue with you.

**AUSTIN:**       But that -- but when I first mentioned to you that that's what the FBI mentioned you, you were not 20 happy about it.

**CAMPOS:**       Of course I'm not --

**AUSTIN:**       And now you just seem very, very calm, but now you're like very calm, so I just want to know how do I get to be calm?  Because right now I'm still --

**CAMPOS:**       Because Susan you got to make a choice whether or not you're going to be calm or not.  I can't make that choice.  I'm not going to live my life -- I've spoken to every person that I know involved in, in, in car dealerships, in, in as attorneys and everything.  I said look, there was a business deal that I thought was correct, I was made to believe that the dealership, you know, approved it.  The dealership actually gave money to the people involved in this thing, and, and I thought people -- and I referred people to be involved in it.  So much so that I put my family at risk.  Now I'm learning that the thing was not right.  Yes, that's wrong. There's a problem here, but to suggest that there was any criminality because I put people together?  For me, you know, if they can indict a ham sandwich, but I can't live my life based on that.  Secondly, to believe that in returning the vehicles my wife committed any problem?  They can come after her, but again, we never knew that there was a problem, and once we learned there was a problem she returned the vehicles. In your case, we've been trying to return the vehicles and the dealership hasn't wanted to accept them in the beginning, and now I thought we had a strategy that -- I don't know what's going to happen with that strategy.  What else can I do?  What, what, what else can I really do?

                  . . .

(End of call)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

JULIO ALVAREZ, and
CHRISTOPHER CAMPOS,

Defendants.

1:16-cr-00395 (VEC)

Date:           March 22, 2014
Time:           11:14:45
Participants:   Christopher Campos ("Campos")
                Susan Austin ("Austin")

Audio File Name:        Out_taxi9739810644_03-22-2014_111445AM

(Beginning at 6:53)

**CAMPOS:** What John is saying is look, you gotta, first, try to minimize the financial exposure for, for ea-, you know, for Susan. Like, you, you know, it's, it's first thing. So you only do that by coming into an agreement by getting the cars that are sitting on lot not doing anything. Right? Because it's not generating any income so how are you going to pay these cars off? You're not going to be able to do it, right?

**AUSTIN:** Right.

**CAMPOS:** So selling the cars, getting rid of them, so you're doing the, the, the -- he thought the broker thing that, that I told Julio about which, you know, I don't know -- that's another -- that's another animal and hopefully he's going to be able to deal with that tomorrow, but you know, he says that, that's the perfect scenario if you can accomplish that.

· · ·

(End of call)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

1:16-cr-00395 (VEC)

JULIO ALVAREZ, and
CHRISTOPHER CAMPOS,

Defendants.

Date:          March 26, 2014
Time:          06:29:58
Participants:  Christopher Campos ("Campos")
               Susan Austin ("Austin")

Audio File Name:     Out_taxi9739810644_03-26-2014_062958PM

**CAMPOS:**    Yeah, but you didn't take the application and put it to 16 different banks. You didn't do that. So if they're going to prosecute, they would have to prosecute the dealership and you. And if the banks are already paid off, do you think this is the kind of case that the U.S. -- I -- look -- yes, look, hypothetically, yes, but Susan, you can either sit here and do nothing -- not get the payoff amounts, let this all go to hell and then get charged, or you can try to resolve this by getting the payoff amounts so we can get these banks made whole, so the idea of fraud, which means that you like took possession of vehicles that you couldn't pay for and that never got paid and were turned over to be used then that's a reality. But if they're paid off, that's a real, real different situation when you're standing in front of any judge in the world.

**AUSTIN:**    And, and is Julio per-, prepared for me to say I don't have the cars, the cars are not located at 43 Krueger Court, they're not in New York?

**CAMPOS:**    You, you just say whatever you want. You can say -- I, I'm not -- look that ain't my -- all I need you to do is get the payoff amounts.

**AUSTIN:**    But they're not -- you know, that will put Julio in a bad position.

**CAMPOS:**    I -- well isn't he in a bad position already? I'm not -- listen I'm --

**AUSTIN:**    Haven't --

**CAMPOS:**    -- I don't care anymore. Like I -- listen, the, the, the, the thing is -- the most important thing to -- most important thing is for you to get these cars paid off, okay? To say where the -- I don't know where the -- I don't -- I don't even know where the cars are, you know. I, you know. So the point being is, you know, to say you don't know where the cars are or the cars are parked in a garage, you know, you don't have that information in front of you, I, I don't know. But what -- I mean getting the payoff amounts should not be this difficult.

**AUSTIN:**    What, what I'm saying is -- when I call -- when a -- when a bank calls me or when I called the bank that time that's what they asked me before I can even get to, I want -- can you just tell me the payoff amount, no, they have their whole little script they have to go through.

**CAMPOS:**    Well, which -- wh-, yeah, yeah, I know, but you don't have to answer those gu-, listen, I'm sorry, I don't have that information right now, but what I do need is the payoff amounts. I'm entitled to the payoff amounts please fax me what, what, what the payoff amount is.

(End of call)