# Holland & Knight

31 West 52nd Street | New York, NY 10019 | T 212.513.3200 | F 212.385.9010
Holland & Knight LLP | www.hklaw.com

Lee D. Vartan
(212) 513-3513
lee.vartan@hklaw.com

June 21, 2017

*Via ECF*

Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States v. Christopher Campos*, 16 Cr. 395 (VEC)

Dear Judge Caproni:

      We write in response to the Court's invitation, at yesterday's charge conference, to supplement the record with regard to the defense's proffered witnesses. In addition to Mrs. Campos and Special Agent Birley (both of whom, we understand, the Court will allow to testify), the defense seeks to call Christopher Meatto, Bernie Martins, and Jeffrey Bratisax. We provide a brief summary of the purpose of each witness below and refer to our arguments at today's conference for additional explanation.

<u>Christopher Meatto</u>

      Mr. Meatto's testimony would be relevant in several respects. First, Mr. Meatto would testify that although he was hired as the attorney for Mr. Alvarez' business in September 2013 and performed significant work on its behalf, he never understood Mr. Campos to have a role in the business.

      Second, the government itself has placed Mr. Meatto at issue, referencing or alluding to him on numerous occasions, including by (1) suggesting that Mr. Campos misrepresented where he went to law school based on a fax cover sheet's reference to HarvardLaw74.com, a website operated by Mr. Meatto (Tr. 568:19-25), and (2) intimating that Mr. Campos has lied about his qualifications because the website Mr. Meatto helped prepare for Mr. Campos's legal practice (a practice which Mr. Meatto was affiliated with) lists Mr. Meatto's specialties as well as those of Mr. Campos (Tr. 980:6 – 984:14). *See also* Tr. 516:1-9; 566:11-15; 979:13-20. Testimony from Mr. Meatto is important to show, *inter alia*, that Mr. Meatto is real, that he went to Harvard Law

Anchorage | Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Houston | Jacksonville | Lakeland
Los Angeles | Miami | New York | Orlando | Portland | San Francisco | Stamford | Tallahassee | Tampa | Tysons
Washington, D.C. | West Palm Beach

June 21, 2017
Page 2

School and specializes in a number of the fields listed on the website, and that he was affiliated with Mr. Campos' practice.

Finally, Mr. Meatto, an attorney like Mr. Campos, would testify that after learning about the business he had no misgivings about its propriety and, indeed, would have considered becoming an investor himself if he had been presented with the opportunity. *See, e.g., United States v. Kozeny*, 667 F.3d 122, 135 (2d Cir. 2011) ("'Evidence of others' knowledge would have been highly relevant had it been supplemented by evidence . . . that the defendant had been exposed to the same sources from which these others derived their knowledge of the fraud.'" (*quoting United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007)); *United States v. Schultz¸* 333 F.3d 393, 416 (2d Cir. 2003) ("Testimony from colleagues who worked with [defendant] as to their understanding of Egyptian law 'was relevant . . . to establish what someone with [the defendant's] extended background in the industry probably would know.' 'Evidence need not be conclusive in order to be relevant.'" (citations omitted)).

Bernie Martins

Bernie Martins's testimony would relate to Mr. Campos's efforts to mitigate any damages to Susan Austin after the business unraveled. Specifically, Mr. Martins would testify regarding the fact that Mr. Campos approached him about the possibility of selling Ms. Austin's cars on the secondary market in order to minimize Ms. Austin's financial exposure. Again, the government first raised this issue. *See* GX 128-T. Mr. Martin's testimony would counter the government's narrative that Mr. Campos harangued Ms. Austin for payoff amounts solely to protect himself. Moreover, the fact that Mr. Campos continued to assist Ms. Austin after everything fell apart, indicates that Mr. Campos was concerned with Ms. Austin's well-being, which in turn makes it less likely that he would ever refer her to a business he thought was actually a criminal scheme.

Jeffrey Bratisax

Jeffrey Bratisax was directly involved in the scheme in which the government alleges Mr. Campos knowingly participated, but Mr. Bratisax will testify that he was unaware of Mr. Campos until contacted regarding this case. Such evidence is clearly relevant. *See, e.g., United States v. Schultz*, 333 F.3d 393, 333 (8th Cir. 2006) (holding that statement by alleged co-conspirator that he did not know defendant "was clearly exculpatory" because, while "[i]t is true that personal knowledge of, or familiarity with, each co-conspirator is not required to show a conspiracy," "the statement by [co-conspirator] and the question of whether the defendant knew [co-conspirator] are clearly *relevant* to the issue of the defendant's role or participation in the conspiracy" (emphasis in original)). Furthermore, Mr. Bratisax will explain how the fraud migrated from dealership to dealership through dealership employees, reinforcing Mr. Campos's narrative that the dealerships perpetrated this fraud, and did so without the knowledge of Mr. Campos or the investors he referred.

June 21, 2017
Page 3

                                                  Respectfully Submitted,

                                                  HOLLAND & KNIGHT LLP

                                                  /s/ Lee Vartan

                                                  Lee D. Vartan

                                                  *Attorney for Christopher Campos*